# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA,**

        **Plaintiff,**

        **-v-**                                                                  Case No. 04-CR-029

**DAVID M. LARSEN,**

        **Defendant.**

## DECISION AND ORDER

The grand jury returned a two-count, superceding indictment against David M. Larsen ("Larsen"). In Count One, he is charged with, between January 31, 2004 and February 1, 2004, willfully and unlawfully kidnapping Teri Sue Jendusa-Nicolai and transporting her from Wisconsin to Illinois, all in violation of 18 U.S.C. § 1201(a)(1). In Count Two he is charged with, between January 31, 2004, and February 1, 2004, knowingly causing his former spouse, Jendusa-Nicolai, to travel in interstate commerce by use of force, duress and coercion, from Wisconsin to Illinois, and, in the course of doing so, assaulting her with a dangerous weapon, all in violation of 18 U.S.C. §§ 2261(a)(2) and (b)(2).

The case was tried to the Court, and subsequently Larsen filed a motion for judgment of acquittal under Rule 29(a) of the Federal Rules of Civil Procedure and a motion to dismiss. Larsen argues that the government failed to prove the essential elements of both charged offenses, that Count One of the superseding indictment is an

offense included in Count Two and therefore must be dismissed to avoid double jeopardy, and that Count Two lies outside the Commerce Clause authority granted to Congress.

**FACTS**

Pursuant to Rule 23(c) of the Federal Rules of Criminal Procedure, the Court will state its specific findings of fact, all of which the parties do not dispute.

On January 31, 2004, Larsen attacked his ex-wife, Teri Jendusa-Nicolai ("Jendusa-Nicolai"), in his Wind Lake, Wisconsin, home after luring her inside. He beat and subdued her, taped her head and hands, and then sealed her into a garbage bin that he partly filled with snow. Jendusa-Nicolai was pregnant at the time. At one point, Larsen told Jendusa-Nicolai that "you always say I abuse you, now you know what abuse is." Larsen then placed the garbage bin containing Jendusa-Nicolai in the bed of his pickup truck. Then Larsen towed Jendusa-Nicolai's car to a neighborhood in Milwaukee, Wisconsin. In Milwaukee, he left her car and discarded the tow dolly.

With Jendusa-Nicolai still entrapped in the garbage bin in the bed of his pickup truck, Larsen drove her from Milwaukee, Wisconsin to Wheeling, Illinois. Somewhere along the way, Jendusa-Nicolai was able to make two 9-1-1 calls. After she made the calls, she freed her hand and attempted to flag down someone in traffic to rescue her. Larsen saw her trying to wave her hand, stopped the truck, struck her again, and took away her cell phone. There is no evidence indicating where that happened.

After Larsen arrived in Illinois, he placed the garbage bin containing Jendusa-Nicolai in a self-storage locker that he had rented some years earlier. He placed three heavy boxes, weighing a total of 106 pounds, over the top of the garbage bin and left her

-2-
Case 2:04-cr-00029-RTR   Filed 03/18/08   Page 2 of 12   Document 132

there in the cold to die. He also propped a board against the garbage bin to prevent it from tipping over.

The authorities arrested Larsen later that afternoon at the Palwaukee Airport control tower where he worked. Larsen never cooperated or helped the police find Jendusa-Nicolai, but after a police investigation she was found the following day, on February 1, 2004, in the storage facility. Jendusa-Nicolai was one hour away from death because her body temperature had dropped to 84 degrees. Doctors were required to amputate her toes. A few days later, she suffered a miscarriage.

## DISCUSSION

The Court considers first whether the government proved the elements of the charged offenses beyond a reasonable doubt. Following that, the Court will consider whether Count One is included in Count Two and whether Count Two is beyond Congress's Commerce Clause authority.

I.   The Government Proved the Essential Elements of Both Charged Offenses

   A.   Kidnapping

Count One of the superceding indictment charges Larsen with kidnapping, in violation of 18 U.S.C. § 1201(a)(1). The elements of kidnapping under § 1201(a)(1) are: (1) that the defendant knowingly and willfully seized, confined, kidnapped, abducted or carried away a person; (2) that the defendant held such a person; and (3) that such person was thereafter transported in interstate commerce while so confined or kidnapped. 18 U.S.C. § 1201(a)(1); *United States v. Sandoval*, 347 F.3d 627, 633 (7th Cir. 2003).

The government proved all three elements beyond a reasonable doubt. Larsen admits that he beat Jendusa-Nicolai, entrapped her in a garbage bin, placed the garbage bin in which she was confined in the bed of his truck, and crossed a state line. Larsen nevertheless contends that crossing a state line is not sufficient to show that he transported her in interstate commerce. The Seventh Circuit recently declared, though, that "to be a federal crime, kidnapping must involve moving the victim across state lines." *United States v. Singh*, 483 F.3d 489, 493 (7th Cir. 2007). Accordingly, the government proved its case beyond a reasonable doubt as to Count One.[1]

### B. Interstate Domestic Violence

Count Two of the superceding indictment charges Larsen with interstate domestic violence, in violation of 18 U.S.C. § 2261(a)(2). The elements of a violation under § 2261(a)(2) are (1) the defendant and victim were spouses or intimate partners (including former spouses);[2] (2) the defendant caused the victim to cross a state line by force, coercion, duress, or fraud; (3) in the course of or as a result of that conduct, the defendant

---

[1] Larsen also contends that the government constructively amended the indictment by only presenting evidence of crossing a state line, not of being transported in"interstate commerce." Count One of the superceding indictment alleged that Larsen unlawfully kidnapped Jendusa-Nicolai "in interstate commerce from Wisconsin to Illinois." Mere evidence of crossing a state line, according to Larsen, lowered the bar that the grand jury set.

Larsen is wrong. The government did not "broaden the possible bases for conviction beyond those presented by the grand jury," *see United States v. Cusimano*, 148 F.3d 824, 829 (7th Cir. 1998), because the Seventh Circuit deems "interstate commerce" to include the crossing of a state line. *See Singh*, 483 F.3d at 493.

[2] Under the statute, the term "spouse or intimate partner" includes a "former spouse of the abuser." 18 U.S.C. § 2266(7)(A)(i)(I). Thus, Larsen, who is the former spouse of the victim, fits the definition of "spouse or intimate partner."

committed a crime of violence upon the victim; and (4) as a result of the crime of violence, the victim was bodily injured.[3]

The government proved these elements beyond a reasonable doubt. Larsen and Jendusa-Nicolai were former spouses. He used considerable force by beating her with a baseball bat and entrapping her in a garbage bin at his home in Wisconsin. The beating he inflicted upon her enabled Larsen to then move her into Illinois where he imprisoned her in his storage facility. During the course of that travel, Larsen beat her again when he saw that she had freed a hand. Jendusa-Nicolai also suffered considerable bodily injury as a result of Larsen's conduct, including the amputation of her toes and the miscarriage of her unborn child. Accordingly, the government proved the elements of § 2261(a)(2) beyond a reasonable doubt.

## II. Multiplicity

Larsen alleges that the indictment is multiplicitous, and as such, potentially subjects him to double jeopardy. It is well established that two statutes, although punishing the same conduct, are not multiplicitous if each requires proof of an additional fact that the other does not require. *See Blockburger v. United States*, 284 U.S. 299, 304 (1932); *see also Rutledge v. United States*, 517 U.S. 292, 297 (1996). Two different statutes can define the same offense when one is a lesser included offense of the other.

---

[3] Section 2261(a)(2) provides, in relevant part:

A person who causes a spouse, intimate partner, or dating partner to travel in interstate or foreign commerce . . . by force, coercion, duress, or fraud, and who, in the course of, as a result of, or to facilitate such conduct or travel, commits or attempts to commit a crime of violence against that spouse, intimate partner, or dating partner shall be punished as provided in subsection (b).

*See Rutledge*, 517 U.S. at 297; *Ball v. United States*, 470 U.S. 856, 861-64 (1985) (concluding that multiple prosecutions were barred because statutes directed at "receipt" and "possession" of a firearm amounted to the "same offense," in that proof of receipt "*necessarily*" included proof of possession).

Larsen contends that the kidnapping charge and the interstate domestic violence charge are multiplicitous. Larsen is wrong. The interstate domestic violence statute requires that the victim be a "spouse or intimate partner," an element not required by the kidnapping statute. In addition, the interstate domestic violence statute requires that the defendant commit a crime of violence during the course of his conduct, a requirement that likewise is not included in the kidnapping statute. Kidnapping, on the other hand, requires proof that the defendant held the victim, which the interstate domestic violence statute does not require. Rather, it only requires that the defendant "cause[d]" the victim to cross a state line by "force, coercion, duress, or fraud," which could happen without physically holding that person.

All three circuits who have considered this question have held that a charge of kidnapping and of interstate domestic violence are not multiplicitous. *See United States v. Lankford*, 196 F.3d 563, 576-78 (5th Cir. 1999); *United States v. Sickinger*, 179 F.3d 1091, 1092-93 (8th Cir. 1999); *United States v. Bailey*, 112 F.3d 758, 766-67 (4th Cir. 1997), *cert. denied*, 522 U.S. 896 (1997). The Court agrees with the holdings of those circuits and likewise finds that the two charges brought against Larsen are not multiplicitous.

III.     Constitutionality of 18 U.S.C. § 2261(a)(2)

Larsen also moves for a judgment of acquittal on Count Two because he contends that 18 U.S.C. § 2261(a)(2) is unconstitutional. Section 2261(a)(2) provides, in relevant part:

> A person who causes a spouse, intimate partner, or dating partner to travel in interstate or foreign commerce . . . by force, coercion, duress, or fraud, and who, in the course of, as a result of, or to facilitate such conduct or travel, commits or attempts to commit a crime of violence against that spouse, intimate partner, or dating partner, shall be punished as provided in subsection (b).

When a party requests that the Court invalidate a statute, the Court must conduct its review with the presumption that Congress acted within its constitutional power. *See United States v. Morrison*, 529 U.S. 598, 607 (2000); *United States v. Harris*, 106 U.S. 629, 635 (1883) ("Proper respect for a co-ordinate branch of the government requires the courts of the United states to give effect to the presumption that congress will pass no act not within its constitutional power.") In other words, the Court will only invalidate a congressional enactment upon a "plain showing" that it contravenes the Constitution. *Morrison*, 529 U.S. at 607.

Larsen moves for a judgment of acquittal on Count Two because he alleges that § 2261(a)(2) exceeds Congress' power to legislate under the Commerce Clause. When considering a such a challenge, it is important to consider that the federal government is not one of plenary authority. *See United States v. Lopez*, 514 U.S. 549, 552 (1995). Federal authority is limited only to those powers that are specifically delegated to it in the Constitution. *Id*. As James Madison wrote: "The powers delegated by the proposed

Constitution to the federal government are few and defined. Those which are to remain in the State governments are numerous and indefinite." *Id*. (quoting *The Federalist* No. 45, pp. 292-93 (C. Rossiter ed. 1961)). Accordingly, because the Constitution did not give Congress the authority to define the criminal law for the entire nation, Chief Justice John Marshall remarked that it was "clear that [C]ongress cannot punish felonies generally." *Id*. (Thomas, J. concurring) (quoting *Cohens v. Virginia*, 19 U.S. 264, 428 (1821).).

Nevertheless, Congress has passed most of its criminal laws, including § 2261(a)(2), pursuant to its power to regulate interstate commerce. The Supreme Court recently clarified the limits of that authority and identified three categories of activity that Congress may regulate under its commerce power. *See Morrison*, 529 U.S. at 608-18; *Lopez*, 514 U.S. at 558-68. First, Congress may regulate the use of the channels of interstate commerce. *Lopez*, 514 U.S. at 558. Second, Congress may "regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities." *Id*. Finally, Congress is empowered to regulate intrastate activities that substantially affect interstate commerce. *Id*. at 558-59.

The question, therefore, is in which of these three categories does the activity prohibited in § 2261(a)(2) reside. Congress's authority to regulate in the first or the second category is plenary. *See Pierce County v. Guillen*, 537 U.S. 129, 147 (2003); *United States v. Robertson*, 514 U.S. 669, 670 (1995) (explaining that the "substantial effects" test defines the extent of Congress's power to regulate intrastate activity and does

not apply when the regulated activity itself crosses state lines). If it is the third category, the regulated activity would have to be economic in nature and substantially affect interstate commerce. *See Morrison*, 529 U.S. at 613.

The only two circuits who have addressed this question have concluded that § 2261(a)(2) falls into the first category. *See United States v. Page*, 167 F.3d 325, 334 (6th Cir. 1999); *United States v. Bailey*, 112 F.3d 758, 766 (4th Cir. 1997).[4] In reaching that conclusion, both circuits relied on the holdings of *Caminetti v. United States*, 242 U.S. 470 (1917) and *Cleveland v. United States*, 329 U.S. 14 (1946).

In *Caminetti*, the Supreme Court upheld the White Slave Traffic Act of 1910, under which the defendant had been convicted of transporting a woman across state lines for the purpose of prostitution or debauchery. 242 U.S. at 484-85. The Supreme Court explained that the "transportation of passengers in interstate commerce . . . is within the regulatory power of Congress . . . and the authority of Congress to keep the channels of interstate commerce free from immoral and injurious uses has been frequently sustained, and is no longer open to question." *Id*. at 491.

Likewise, in *Cleveland*, the Supreme Court upheld the Mann Act, which forbade the transportation in interstate commerce of any woman or girl for the purpose of prostitution or debauchery or for any other immoral purpose. The defendants had transported women across state lines for the purpose of cohabiting with them as plural wives in violation of the law. The Supreme Court, in affirming their convictions, stated

---

[4] The parties discuss two other decisions, but those cases addressed § 2261(a)(1), which, unlike § 2261(a)(2), prohibits the actual travel of the defendant. *See United States v. Lankford*, 196 F.3d 563, 570-72 (5th Cir. 1999); *United States v. Gluzman*, 154 F.3d 49, 50 (2d Cir. 1998).

that the "fact that the regulation of marriage is a state matter does not, of course, make the Mann Act an unconstitutional interference by Congress with the police powers of the States." *Cleveland*, 329 U.S. at 19. "The power of Congress over the instrumentalities of interstate commerce is plenary," the Supreme Court explained, "and it may be used to defeat what are deemed to be immoral practices." *Id*.

The difficulty in the instant case, though, is that unlike the White Slave Traffic Act and the Mann Act, the *actus reus* of the crime in § 2261(a)(2) is *not* the travel of the defendant across state lines. Section 2261(a)(2) rather punishes a defendant for causing the *victim* to cross state lines as a result of the defendant's intrastate act of force, coercion, duress, or fraud. The defendant need not even cross a state line himself. Accordingly, Larsen argues that unlike the laws upheld in *Caminetti* and *Cleveland*, § 2261(a)(2) is really targeted at purely intrastate activity, which places it in the third category identified in *Lopez*.

In its analysis, the Court finds the cases upholding 18 U.S.C. § 922(g)(1) to be instructional. *See United States v. Lemons*, 302 F.3d 769, 771-72 (7th Cir. 2002); *United States v. Mitchell*, 299 F.3d 632, 634-35 (7th Cir. 2002). Section 922(g)(1) prohibits a felon from possessing a firearm that has been "shipped or transported" in interstate commerce. The defendant's activity is purely an intrastate one – the possession of a firearm. The connection to interstate commerce is only incidental to that possession, that is to say, the government needs only to show that the firearm that the defendant possessed moved across state lines at one point in time. *See Lemons*, at 771-72. The Seventh Circuit nevertheless has upheld § 922(g)(1) by relying on the language of *Lopez* that said

that a jurisdictional element that requires a firearm to cross a state line "would ensure, through case-by-case inquiry, that the firearm possession in question affects interstate commerce." *Id*. (quoting *Lopez*, 514 U.S. at 561). A jurisdictional element, according to the Supreme Court in *Lopez*, "might limit its reach to a discrete set of firearm possessions that additionally have an explicit connection with or effect on interstate commerce." *Lopez*, 514 U.S. at 562. Because § 922(g)(1) contained such a jurisdictional element, the Seventh Circuit upheld the statute as a proper regulation of interstate commerce. *Id*.

Section 2261(a)(2) likewise has a jurisdictional element, namely, that the victim enter into the channels of interstate commerce by crossing a state line. Accordingly, § 2261(a)(2) only reaches "a discrete set" of acts of domestic violence that have "an explicit connection with or effect on interstate commerce." *Id*. Furthermore, the connection of the defendant's intrastate activity to interstate commerce in the felon-in-possession statute is even more attenuated than the connection between the defendant's intrastate activity and interstate commerce in § 2261(a)(2). In § 2261(a)(2), the defendant must actually cause the victim to enter into the channels of interstate commerce by crossing a state line, while the felon in possession of a firearm need only possess a gun that traveled across a state line at any point in time. Larsen does not attempt to distinguish § 2261(a)(2) from the Seventh Circuit cases upholding the felon-in-possession statute, and the Court cannot discern any meaningful distinction either. Accordingly, the Court finds that just as it is bound by the Seventh Circuit precedent upholding the felon-in-possession statute, it is likewise bound to uphold § 2261(a)(2).

-11-
Case 2:04-cr-00029-RTR   Filed 03/18/08   Page 11 of 12   Document 132

Like the felon-in-possession statute, Congress is regulating the channels of interstate commerce in § 2262(a)(2). Congress's power to regulate the channels of interstate commerce is plenary, and as such, § 2261(a)(2) does not exceed Congress's Commerce Clause authority.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT**

Larsen's Motion for Acquittal (Docket No. 127) is **DENIED**.

Larsen's Motion to Dismiss (Docket No. 128) is **DENIED**.

The Court hereby finds that David M. Larsen is **GUILTY** of Count One of the Superceding Indictment, namely kidnapping in interstate commerce, in violation of 18 U.S.C. § 1201(a)(1).

The Court also hereby finds that David M. Larsen is **GUILTY** of Count Two of the Superceding Indictment, namely interstate domestic violence, in violation of 18 U.S.C. § 2261(a)(2) and (b)(2).

The parties will contact the Court to schedule a sentencing date which will accommodate the preparation of a presentence report by the Probation Office.

Dated at Milwaukee, Wisconsin, this 18th day of March, 2008.

**SO ORDERED,**

s/ Rudolph T. Randa

**HON. RUDOLPH T. RANDA
Chief Judge**